**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL ROSALES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-cv-06943 |
| | ) | Judge John J. Tharp, Jr. |
| WELTMAN, WEINBERG & | ) | |
| REIS CO., L.P.A., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This lawsuit stems from a 2014 attempt by defendant, the law firm Weltman, Weinberg &

Reis, to collect a debt from the plaintiff, Michael Rosales. Weltman sued Rosales in Cook County

Circuit Court, but its action was dismissed with prejudice because it named the wrong creditor in

its complaint. Rosales then sued Weltman in federal court, charging that Weltman violated the Fair

Debt Collection Practices Act by filing the flawed state court lawsuit against him. Before the Court

now are both parties' motions for summary judgment. The Court considers whether Weltman's

action was indeed an FDCPA violation, and whether Weltman can escape liability pursuant to 15

U.S.C. § 1692k(c) because it made an unintentional, good faith error despite having procedures

reasonably adapted to prevent the error. For the reasons discussed below, the Court grants both

motions in part and denies them in part.

**BACKGROUND**

Plaintiff Michael Rosales, formerly an active duty service member, obtained a residential

loan from lender IMPAC Funding, secured by his condo, on which he defaulted in 2009. Agreed

Statement of Material Facts (ASMF) ¶¶ 3-5 (ECF No. 118-2). The debt was charged off in 2010.

ASMF ¶ 6. Enter Deutsche Bank, an alleged assignee of Rosales' mortgage, and Green Tree

Servicing LLC, the loan servicer, which retained defendant Weltman to collect the defaulted debt. ASMF ¶¶ 9-10. Weltman's agreement with Green Tree provided that Green Tree would provide accurate information regarding the debt, and pursuant to that agreement, in November 2013, Green Tree directed Weltman to sue Rosales on behalf of a trust creditor, "Deutsche Bank National Trust Company, as Trustee for Home Equity Loan Asset-Backed Trust, Series INDS **2006-3**." ASMF ¶¶ 11-13 (emphasis added). Over the next several months, Weltman mailed letters to Rosales seeking the amount of $49,730 on behalf of a creditor named "INDYMAC," apparently another entity in the chain of assignment. PSMF ¶¶ 22-24.[1]

In February 2014, Kirsten Pepper, a Weltman lawyer, set to work on the complaint. Pepper's practice was to mass produce complaints using mail-merge, a tool within Microsoft Word that enables one to use data in a spreadsheet to populate information throughout Word documents.[2] ASMF ¶ 49. The first version of the complaint Pepper generated stated that Rosales owed $95,453.84 to *Deutsche Bank National Trust Company, as Trustee and Supplemental Interest Trustee for IndyMac MBS, Inc., Series INDS **2006-2B** Assignee of IndyMac Bank, F.S.B.*, misstating the amount of the debt by roughly 100% and identifying the wrong creditor. Notwithstanding these errors, the complaint was sent to Green Tree for verification and Green

---

[1] Weltman disputes that this letter was sent on behalf of the wrong creditor, saying that "the full name of the trust entity is **IndyMac ABS Inc**., *Home Equity Mortgage Loan Asset-Backed Trust, Series INDS 2006-3*." Def.'s Respon. to Pl.'s Rule 56.1 Statement ¶ 23-24 (ECF No. 131). This does little to clear up the confusion as to the true creditor, as Weltman ultimately claims that the correct creditor is **Deutsche Bank National Trust Company**, *as Trustee for Home Equity Loan Asset-Backed Trust, Series INDS 2006-3.* Def.'s Statement of Material Facts (DSMF) ¶ 15 (ECF No. 115). In any event, Rosales does not argue that Weltman's pre-complaint correspondence violated the FDCPA.

[2] *See* Microsoft Support, "Use mail merge for bulk email, letters, labels, and envelopes" *available at* https://support.microsoft.com/en-us/office/use-mail-merge-for-bulk-email-letters-labels-and-envelopes-f488ed5b-b849-4c11-9cff-932c49474705

Tree approved the draft. PSMF ¶ 26-27, Pl.'s Ex. E WWR004 (ECF No. 115-7). Pepper apparently caught the error in the amount of the debt, however, and drafted another complaint for the amount of $49,730 on behalf of the same 2006-2B trust. She again sent the complaint to Green Tree for verification, and Green Tree again approved the complaint—despite the fact that Weltman had still named the wrong creditor. DSMF ¶ 27-28. Defendants acknowledge that they do not know how Pepper entered the wrong trust name when she created the complaint. ASMF ¶ 42. Weltman filed the erroneous complaint against Rosales in the Circuit Court of Cook County on October 17, 2014. ASMF ¶ 23.

When Rosales was served with the complaint, he recognized that the lawsuit had something to do with the condo loan he had defaulted on years earlier. DSMF ¶ 38. He hired a lawyer who recognized that Trust 2006-2B, an entity that actually exists and has sued other debtors, was incorrectly named as the creditor in the "verified complaint" filed by Weltman. PSMF ¶¶ 3-4, 20. On January 15, 2015, Rosales filed a motion to dismiss the state court action. PSMF ¶ 5. Two months later, Weltman had still not determined the identity of the correct creditor. ASMF ¶ 40. The firm never sought to withdraw the complaint, nor did it file an amended complaint to correct the erroneous identification of the trust creditor. ASMF ¶ 57. Therefore, on April 16, 2015, the Cook County Circuit Court granted Rosales' motion and dismissed the action with prejudice, finding that "Deutsche Bank is not the purported holder of the disputed note." ASMF ¶ 36.

Rosales then filed this action bringing FDCPA and state law claims against the 2006-3 trust, the 2006-2B trust, and Weltman. The Court dismissed the claims against the trusts and dismissed the state law claims against Weltman while allowing the FDCPA claims to proceed. Mem. Opinion and Order 1 (ECF No. 48). The operative complaint alleges that Weltman violated 15 U.S.C. §1692e (prohibiting "false, deceptive, or misleading" representations in connection with

3

the collection of any debt), § 1692f (barring "unfair or unconscionable" collection practices), and the Servicemember's Civil Relief Act. Weltman asserts the bona-fide error defense available under § 1692k(c).

## DISCUSSION

The FDCPA governs the conduct of debt collectors such as Weltman. ASMF ¶ 8. Its purpose is to protect debtors "from unscrupulous collectors, regardless of the validity of the debt." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997). It is "a strict liability statute, and debt collectors whose conduct falls short of its requirements are liable irrespective of their intentions." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 805 (7th Cir. 2009). The FDCPA relegates questions of a defendant's intent to the "bona-fide error" defense, wherein the defendant bears the burden to show that it committed an unintentional, good faith error despite having procedures reasonably adapted to prevent that error. 15 U.S.C. § 1692k(c).

When ruling on a motion for summary judgment, the Court examines whether there is any genuine dispute as to any material fact such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(a). This standard remains unchanged when the parties both file motions for summary judgment; the Court "construes all inferences in favor of the party against whom the motion under consideration is made." *Cremation Soc'y of Illinois, Inc. v. Int'l Brotherhood of Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2016).

The Court first examines whether Rosales has met his burden on summary judgment to show that Weltman violated the FDCPA, and finds that plaintiff has established, through undisputed evidence, a violation of § 1692e (barring any misrepresentation in communications with a debtor). Further, Weltman is not entitled to a bona fide error defense, because it cannot

4

establish that the error was unintentional, nor that its procedures were reasonably adapted to prevent the error.

## I. Weltman violated 15 U.S.C. § 1692e when it sued on behalf of an entity to which Rosales owed nothing.

The FDCPA proscribes "any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. The conduct covered by § 1692e includes litigation activity in lawsuits against debtors. *See Marquez v. Weinstein, Pinson, & Riley, P.S.,* 836 F.3d 808, 811-812 (7th Cir. 2016). Mr. Rosales argues that Weltman violated three provisions of this section. He contends that Weltman violated § 1692e(2)(A) by falsely representing "the character, amount, or legal status" of Mr. Rosales' debt when it sued him on behalf of a creditor who had no right to collect, and § 1692e(2)(B) because Weltman falsely represented that the 2006-2B trust was entitled to compensation such as attorneys' fees and costs. Further, he claims that Weltman violated § 1692e(5) by "threaten[ing]… action that cannot legally be taken," because the 2006-2B trust had no right to sue Mr. Rosales.

To determine whether a statement is false or misleading under the FDCPA,[3] the Court applies an objective standard that asks "how an unsophisticated consumer would perceive the statement." *Marquez*, 836 F.3d at 812. "The unsophisticated consumer may be uninformed, naïve, and trusting, but is not a dimwit, has rudimentary knowledge about the financial world and is capable of making logical deductions and inferences." *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th

---

[3] The Seventh Circuit has held that a statement, even if incorrect, is not "false" under § 1692e unless it would confuse an unsophisticated consumer. *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) (rejecting argument that a false statement need not be misleading to support liability under § 1692e). Under this holding, it appears that there is no material distinction between a statement that is "false" under § 1962e and one that is "misleading," despite the statute's use of the terms in the alternative.

Cir. 2012). To apply this standard, the Seventh Circuit has "categorized § 1692e cases into three groups. The first category consists of cases where the challenged language is obviously not misleading and no extrinsic evidence is required to demonstrate that a reasonable unsophisticated consumer would not be misled. The second category includes those cases where the debt collection language is not deceptive or misleading on its face, but could be construed so as to be confusing or misleading to the unsophisticated consumer. . . The final category of cases involves language that is plainly false, deceptive, or misleading, and therefore requires no additional evidence for the plaintiff to succeed on her claim." *Johnson v. Enhanced Recovery Co., LLC*, 961 F.3d 975, 982-83 (7th Cir. 2020) (internal citations omitted).

Rosales contends that, since the Court denied Weltman's motion to dismiss and held Rosales had sufficiently alleged a §1692e violation, the outcome is now foreordained at the summary judgment stage under "the law of the case." Pl.'s Mot. for Sum. J. 11-12 (ECF No. 118-1). But that is not necessarily so. On a motion to dismiss, the Court assumes the truth of the facts alleged in the complaint; the Court's evaluation of the same issue on summary judgment depends on what evidence the parties adduce to prove what happened and whether that evidence creates any material fact disputes that must be resolved by a jury. *See, e.g.*, *Johnson*, 961 F.3d at 981-82 & n.1 (7th Cir. 2020) (affirming both the denial of a motion to dismiss a § 1692e claim and the grant of summary judgment for the defendant collector where debtor failed to adduce evidence to support claim). Given the procedural posture when the Court made that statement, where the task was to weigh the plausibility of the claim based on assumed facts rather than whether a genuine dispute of material fact exists, it remains necessary to examine whether the facts demonstrate a § 1692e violation such that no reasonable jury could find otherwise.

6

The parties do not dispute that Weltman named the wrong creditor in its lawsuit against Rosales. ASMF ¶ 25. In the state court case, Weltman filed a complaint seeking a judgment of $49,730 for a plaintiff to whom Rosales owed nothing. *Id*. Plaintiff contends that "there can be no question that the unsophisticated consumer would find this misleading and deceptive" and thus no extrinsic evidence, such as consumer surveys, is necessary to demonstrate that the errant lawsuit is an FDCPA violation. Pl.'s Mot. for Sum. J. 14. He further argues that the violation is material, since an unsophisticated consumer faced with a lawsuit from the wrong creditor could have paid the wrong creditor or been subject to a judgment to the same, meaning that he would be out almost $50,000 dollars while still owing the entire debt to the actual creditor. *Id.* at 14-15.

Defendant responds that Rosales was not misled: he could not have been confused about the state court pleadings because it is undisputed that he recognized the lawsuit had something to do with his defaulted condo loan. Def.'s Mot. Sum. J. 6-7 (ECF No. 114). Weltman also maintains that a two-character error in a 95-character trust name is trifling and immaterial. Def.'s Response at 1 (ECF No. 130). Finally, Weltman argues that Rosales has not met his burden on summary judgment because he has not produced extrinsic evidence that this two-character error would materially mislead the prototypical unsophisticated consumer.

The Court agrees with Rosales that Weltman's complaint on behalf of a wrongly-named but extant creditor falls into the class of statements that are "plainly false, deceptive, or misleading," *Johnson*, 961 F.3d at 983, and "could well confuse a substantial number" of unsophisticated consumers. *Williams v. OSI Educ. Servs., Inc.,* 505 F.3d 675, 678 (7th Cir. 2007). The most likely conclusion an unsophisticated consumer could reach upon receiving a complaint brought by "Deutsche Bank National Trust Company, as Trustee and Supplemental Interest Trustee for IndyMac MBS, Inc., Series INDS 2006-2B Assignee of IndyMac Bank, F.S.B. Trust"

7

was that that entity—the named plaintiff—was asserting that the unsophisticated consumer owed a debt to it. Nothing on the face of the complaint would suggest to an unsophisticated consumer that the plaintiff had been named in error or that the debt specified was actually owed to a different trust.

Weltman argues that the allonge[4] attached to the complaint—listing the 2006-3 trust as owner of the note—resolves this confusion for the unsophisticated consumer. The Court disagrees. Even the Weltman lawyer handling the account, seeing the 2006-3 trust named on the allonge, did not think the allonge resolved the identity of the true creditor. The first sign that identifying the creditor was not simply a matter of flipping to the documents attached to the complaint was Kirsten Pepper's statement to her colleagues in January 2015, after the suit had been filed, that the loan had "a tenuous chain of title that will most certainly be challenged." Pl.'s Resp. to Def.'s Mot. for Sum. J 3-4 (ECF No. 132). Then in March 2015, when faced with Rosales' motion to dismiss based on the 2006-2B trust's lack of standing, Weltman did not just check the allonge, realize its error, and amend its complaint to name the 2006-3 trust as plaintiff. Instead, Pepper sought clarification from Green Tree, noting that the blank endorsement to the 2006-3 trust made ownership "nebulous" and "messy;" that her effort to amend the complaint was frustrated by her inability to "determine who you are servicing the contract for." ASMF ¶ 47. If the allonge naming the 2006-3 trust did not make the 2006-3 trust's ownership obvious to the debt collector's own lawyer, there seems little reason to believe that it would have done so for an unsophisticated

---

[4] An "allonge" is an attachment to a negotiable instrument used for subsequent endorsements of the instrument. *See generally* Black's Law Dictionary (9th ed. 2009). The allonge includes two pages with three undated indorsements. : (1) an indorsement from IMPAC Lending Group, Rosales' originating lender, to IndyMac Bank, F.S.B.; (2) an indorsement from IndyMac Bank, F.S.B., to the 2006-3 Trust; and (3) a blank indorsement executed by the 2006-3 Trust.

consumer. An unsophisticated consumer may have "rudimentary knowledge of the financial world," *Lox*, 689 F.3d at 822, but he is not expected to have more knowledge than the lawyer litigating a collection suit against him. Thus, even if the unsophisticated consumer were to realize something was amiss with the identity of the creditor suing him, the record demonstrates it is highly unlikely that consumer would have been able to identify the correct creditor by examining the allonge or other documents attached to the pleadings.

Weltman also emphasizes that the trust names are long and complex, and the error was one of a mere two characters,[5] but instead of absolving the firm, this argument serves to highlight why this error was the sort that is materially misleading to the unsophisticated consumer. Those two characters are more consequential than Weltman would have the Court believe—the erroneous trust designation refers to another actual, existing trust entity.[6] The error is not one that is easily discernable on its face, and there is a substantial risk that an unsophisticated consumer would have proceeded with the lawsuit and unwittingly exposed himself to a judgment of almost $50,000 to a trust to whom he owed nothing. *See, e.g., Green v. Monarch Recovery Management, Inc.*, No. 13 CV 418, 2015 WL 4599480, *5 (S.D. Ind. July 29, 2015) (misidentification of creditor was

---

[5] The parties agree that the only difference between the erroneous and correct entity names is the numeric designation of the trusts: "2006-2B" (the incorrect designation) and "2006-3" (the correct designation). Agreed Rule 56.1 Statement, ECF No. 118-2, at ¶ 26.

[6] Weltman appears to dispute the existence of the 2006-2B trust by claiming the record does not establish it. Def.'s Resp. to Pl.'s Rule 56.1 Statement 11 (ECF No. 131). Weltman's "dispute" is startling. The 2006-2B trust appeared as a defendant in ***this lawsuit*** and successfully moved to dismiss the action against it. One would think that non-existence would have been an excellent argument for a motion to dismiss, but the 2006-2B trust did not assert its non-existence, nor did the Court dismiss the suit against it on that basis. *See* The Trusts' Mot. to Dismiss 15 (ECF No. 37) and Mem. Op., ECF No. 48, at 3-4. This Court can certainly take judicial notice of the appearance of parties in this case as a source "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

9

misleading on its face and no extrinsic evidence was required to establish "what is already plainly obvious[.]"). *Cf. Steffek v. Client Services, Inc.*, 948 F.3d 761, 765-66 (7th Cir. 2020) (holding failure to identify current creditor to create a facial lack of clarity as a matter of law in context of a claim under § 1692g(a)(2)).

Weltman's argument that Rosales was not confused because he recognized that this debt had something to do with his loan is off-the-mark. Whether Rosales was actually confused by the misidentification of the creditor is largely irrelevant to whether the complaint was misleading. The unsophisticated consumer standard is objective, not subjective; violations of the FDCPA are measured not by the degree of actual confusion but by the risk of confusion on the part of unsophisticated consumers. *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007) ("The test, however, is not whether the individual who received the letter was misled, but whether an unsophisticated consumer would be misled by the representations made by the debt collector. . . . As such, a subjective inquiry into [the debtor's] confusion or clarity is irrelevant.").[7] *See also*, *e.g.*, *Frank v. Autovest*, LLC 961 F.3d 1185, 1189 (D.C. Cir. 2020) (under FDCPA, a plaintiff need not prove that she was actually confused, only that an unsophisticated consumer would be).[8]

---

[7] "Evidence of actual confusion on the part of a plaintiff may provide some extrinsic evidence to support the proposition that the hypothetical unsophisticated consumer would be confused. However, evidence that an individual plaintiff was or was not confused by the letter is not determinative as to whether an unsophisticated consumer would be confused." *Blarek v. Encore Receivable Mgmt., Inc.*, 244 F.R.D. 525, 531 (E.D. Wis. 2007).

[8] By contrast, the standing inquiry for an FDCPA claim is based on the debtor's subjective understanding of an allegedly misleading communication. *Autovest*, 961 F.3d at 1189. Here, however, there is no challenge to Rosales's standing because even assuming that he was never deceived by the erroneous complaint, he incurred concrete damages as a result of having to hire an attorney to litigate the case to dismissal.

10

What is more, Rosales' suspicion that the lawsuit had something to do with his condo loan actually confirms the risk Weltman's lawsuit posed to the unsophisticated consumer. An unsophisticated consumer is unlikely to recognize the precise designation of the trust to whom his debt has been assigned. A consumer, sued about a debt he recognizes, and not thinking to question whether the right creditor is suing (as an unsophisticated consumer likely would not), might not feel confusion about the debt upon being served the complaint. That is exactly the problem. The relevant confusion would occur later, if after paying a judgment to the wrong creditor, the actual creditor came seeking payment. Far from absolving Weltman, Rosales' recognition of the debt demonstrates the danger to the unsophisticated consumer: they would not think to inquire into which of various entities in a chain of assignment (at least one of which has a 95-character name) he actually owes the debt. Instead, it is likely that the unsophisticated consumer would end up "paying or acknowledging his debt" to the wrong creditor instead of hiring a lawyer, as Weltman says Rosales should have done here. Def.'s Mot. Sum. J. at 9.

This danger of paying the wrong creditor also makes the misrepresentation material in that "it had the ability to influence a consumer's decision." *Lox*, 689 at 826. Weltman asserts that had Rosales paid the 2006-2B trust, the money would have eventually found its way to the right creditor. Def.'s Reply at 4-5 (ECF No. 136). But the Court has no basis on which to infer that what Weltman dismisses as a "doomsday scenario" would not come to pass, because Weltman's argument for dismissing such a scenario rests on no evidence whatsoever. *Id*. Plaintiff has carried his burden to show that Weltman sought judgment on behalf of the wrong creditor. He need not go further and prove a negative: that the wrong creditor wouldn't have paid the funds to the correct one.

Defendant leans heavily on *Markette v. HSBC Bank, USA, N.A.*, 2018 WL 1695368 (N.D. Ill. 2018). That case dealt with, among other things, a law firm's alleged misrepresentation of a creditor's name that is similarly as long and complex as the trust name in this case. The foreclosure lawsuit in that case named "HSBC Bank USA, National Association, as Trustee for SG Mortgage Securities Trust… Trust 2006-FRE1" instead of the longer form of the trust name, which included "Trust 2006-FRE1, Asset-Backed Certificates, Series 2006-FRE1[.]" *Id.* at *6. The Court in that case held that this misnomer, "at best a hyper-technical violation," did not violate § 1692e. *Id.* That decision hinged on the fact that the plaintiff did not "make clear what they would have done differently if the complaint … had contained the correct name of the trust." *Id.* The alleged violation in that case was not that the debt collectors had named the wrong creditor, it was that they had used a technically imprecise designation for the correct one. As such, the error did not pose a substantial risk that the debtor would pay the wrong entity; there was only one entity to pay. Mr. Rosales presses an altogether different claim here: Weltman's error resulted in a lawsuit on behalf of an incorrect, yet existing and distinct entity.

The court thus finds that no genuine dispute of material fact exists as to whether Weltman's suit on behalf of the wrong creditor violated § 1692e(2)(A) (misrepresenting "the character, amount, or legal status") of a debt, § 1692e(2)(B) (falsely representing "compensation which may be lawfully received by any debt collector") and § 1692e(5) (taking action "that cannot be legally be taken").[9] It remains, however, to address whether Weltman's violation should be excused as a "bona fide" error.

––––––––––––––––––––––––––––

[9] Having found that Weltman violated § 1692e, the Court declines to reach the issue of Weltman's liability under § 1692f. No additional damages would flow from a finding that Weltman also violated § 1692f of the FDCPA; it is merely an alternative legal theory offered in support of

12

**II. Weltman is not entitled to the bona-fide error defense.**

A debt collector may avoid liability under the bona fide error defense by proving[10] by a preponderance of the evidence that (1) the violation was unintentional, resulting from a "bona fide error," and (2) that error occurred "not-withstanding the maintenance of procedures reasonably adapted to avoid any such error." *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995–96 (7th Cir. 2003) (internal quotation omitted).[11] Only mistakes of fact, not law, are subject to the bona fide error defense. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010).

As for the first element, Defendant maintains that its naming of the wrong trust as plaintiff was simply a typo. Def.'s Mot. Sum. J. 16-18 (ECF. No. 114). But defendant has produced no evidence that shows this was simply an errant keystroke, and indeed they admit that they are "uncertain" as to how the wrong entity came to be named as plaintiff. ASMF ¶ 15. Weltman's

---

Rosales' claim that he was sued by a creditor to whom he owed nothing. While it is difficult to posit that a claim that is "false, deceptive, or misleading" under § 1692e would not also qualify as "unfair or unconscionable" under § 1692f, the Court sees little profit in exploring an alternate route to FDCPA liability, especially one the Seventh Circuit has described as "as vague as they come." *Beler v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 480 F.3d 470, 474 (7th Cir. 2007).

[10] Because bona fide error is an affirmative defense, the debt collector bears the burden of proving the elements of the defense.

[11] As Judge Bucklo noted in *Novak v. Monarch Recovery Mgmt.*, 235 F. Supp. 3d 1039, 1041 n.3 (N.D. Ill. 2016), "[i]n some cases, the Seventh Circuit has further broken down the two prongs articulated in *Turner* into three prongs, severing the question of the defendant's intent from the question of whether the violation resulted from a bona fide error. *See, e.g.*, *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) (citing *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997))." In *Kort*, the panel indicated that a bona fide error is one made in good faith. 394 F.3d at 538. If there is a distinction between unintentional errors and good faith errors, however, it is too subtle to matter in this case.

contention that the lawyer working on Rosales' account did, in fact, just make some unfortunate keystrokes, or perhaps a copy-and-paste error when it mail-merged its mass-produced complaints is sheer speculation, devoid of evidentiary support.

Weltman's speculation, moreover, is undermined by the evidence that, even after Rosales filed his motion to dismiss, Weltman spent months trying to figure out the identity of the correct creditor and never did (had it done so, presumably it would have sought to amend its complaint). ASMF ¶ 47-48. The evidence adduced shows that Weltman attorney Kirsten Pepper was confused about the status of the debt—she did not resolve the ownership issue simply by reviewing the file and noticing a typo. Rather, she examined the documents in the file and found them "nebulous" and "messy." ASMF ¶ 47. Pepper's confusion—which Weltman never addresses—militates against the notion that Weltman's naming of the wrong plaintiff was a mere scrivener's error.

That doesn't necessarily mean that the error was intentional, of course; given Pepper's communications seeking more information from Green Tree, one might reasonably infer that she simply made a good faith mistake in identifying the proper creditor. On the other hand, one might infer that Pepper thought that it was unlikely to matter if the wrong trust was named or that the chain of assignment was tenuous, since debtor defendants are typically unrepresented by counsel and often lose on default judgments.[12] This is little more than speculation—but the point is that Weltman has not shown by a preponderance of the evidence that its error was a mere innocent clerical mistake. And while it may seem a sensible inference that the mistake was unintentional

---

[12] *See* Comment, *Improving Relief from Abusive Debt Collection Practices*, 127 Harv. L. Rev. 1447, 1449 (2014) ("Empirical evidence shows that many debt buyers using a high volume of lawsuits as a component of their recovery strategy rely heavily on the assumption that consumers often fail to show up to contest the case; this assumption is largely valid.").

14

and bona fide, the court draws inferences in favor of the non-movant in adjudicating Defendant's motion for summary judgment. On the evidence adduced, a reasonable jury could find that the error was not merely an innocent clerical error. As such, the Court denies Weltman's motion for summary judgment as to its bona fide error defense because it cannot show that the error was unintentional or bona fide.

The Court finds, however, that Plaintiff's motion should be granted. Even if Weltman's account of a mail-merge gone wrong were credited, no reasonable jury could find that Weltman's procedures were reasonably adapted to prevent it from suing on behalf of the wrong plaintiff. Such procedures must "have mechanical or other such regular orderly steps to avoid mistakes." *Jerman*, 559 U.S. at 587 (internal quotation marks omitted). "A thinly specified policy, allegedly barring some action but saying nothing about what action to take" is not an adequate procedure under § 1692k(c). *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 900 (7th Cir. 2015).

Weltman developed a procedure for auditing complaints before filing, but that procedure was not developed until several months after Weltman sued Rosales. PSMF ¶ 14. Weltman's corporate deponent likewise testified that its audit procedure was developed after the filing of the complaint, and states that it would not have applied to the lawyer who prepared the complaint in any event. Pl.'s Reply at 16 (ECF No. 137). Thus, while Weltman developed procedures to prevent this type of error, it did so only after it had violated the FDCPA with respect to Rosales, and thus those procedures cannot provide the basis for Weltman's § 1692k(c) defense.

Weltman does not dispute that the audit policy post-dates the FDCPA violation, but instead points to "standard operating procedures" it had in place before the events in question. Def.'s Resp. to Pl.'s Mot. for Sum. J. 14 (ECF No. 134). Weltman's invocation of those policies vaguely states that "Weltman has standard operating procedures which govern complaint preparation and filing

15

of lawsuits in Illinois." *Id*. Further, Weltman asserts, without supplying a citation to the record, that "complaints are reviewed multiple times by Weltman attorneys or legal staff[.]" Def.'s Resp. at 17 (ECF No. 130). This is the sort of "thinly specified 'policy,' allegedly barring some action but saying nothing about what action to take" that the Seventh Circuit has rejected. *Leeb*, 806 F.3d at 900 (holding that debt collector's policy against sending letters to consumers who had lodged a dispute was not enough to invoke the bona fide error defense for sending such unlawful letters).

That leaves Weltman's argument that it reasonably relied on its client to provide accurate information and verify the state complaint before filing. Weltman sent the complaint to its client twice before filing the state lawsuit against Rosales. PSMF ¶¶ 26-28. They contend that this practice is a policy or procedure sufficient to invoke the bona-fide error defense. There are at least two problems with this argument. First, Weltman admits that it had everything it needed to correctly file suit against Rosales when its client first sent the placement file, and before the complaint was drafted. ASMF ¶ 39. Thus, the error was Weltman's, not the creditor's; it occurred independently of Weltman's reliance on its client to provide accurate information. Based on the record, and even assuming that Pepper's identification of the creditor as the 2006-2B trust was a typo, Weltman had no procedures at all in place to catch that sort of human error.

Second, Weltman had notice that its client's verification process was unreliable. Weltman twice sent the complaint to Green Tree for verification, and both times the client returned a "verified complaint" despite major errors. The first time, Green Tree verified a complaint seeking nearly twice the amount that Rosales is alleged to have owed. PSMF ¶ 26-27. The second complaint was verified despite naming a creditor who appears nowhere in the loan documents. While the fact that an error occurred does not, standing alone, establish that Weltman's procedures were inadequate (if that were the standard, there would be no point to a bona fide error defense),

16

the fact that it missed errors on separate occasions suggests that Green Tree's verification does not constitute a process reasonably adapted to prevent an error in identifying the wrong creditor. Reliance on a creditor's information can support a bona fide error defense, but that reliance must be reasonable. *See Hyman v. Tate*, 362 F.3d 965, 967-69 (finding that reliance on creditor was reasonable where creditor had a demonstrated history of reliably preventing the forwarding of accounts in bankruptcy). And given Weltman's confusion about the owner of the debt, when it concedes it had all the information it needed from its client, it is also unreasonable for a lawyer to rely on a client's verification of errors for which the lawyer is responsible for creating.

Finally, though Rosales appears to abandon the issue in his motion for summary judgment, he also alleged that Weltman violated the Servicemembers' Civil Relief Act because Rosales was an active duty military member, and Weltman failed to recognize that status and apply a lower interest rate. The Court grants Weltman's motion as to its bona-fide error defense to this violation. Checking a debtor's military status against a Department of Defense database, as Weltman did here, ASMF ¶ 53-55, is a procedure reasonably adapted to guard against SCRA violations.

*    *    *

For the foregoing reasons, the Court grants Rosales' motion as to his § 1692e claims, grants it as to Weltman's § 1692k(c) defense to the FDCPA claims, but denies the motion as to the defense to the Servicemember's Civil Relief Act (SCRA) claims. The Court denies Weltman's motion for summary judgement except as to its § 1692k(c) defense to the Servicemember's Civil Relief Act claims.

Date: November 12, 2020

John J. Tharp, Jr.
United States District Judge